UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LOCAL ACCESS, LLC and BLITZ
TELECOM CONSULTING, LLC,

      Plaintiffs,

v.                                                                                     Case No.: 6:20-cv-2315-WWB-EJK

KELLEY DRYE & WARREN LLP,
HENRY KELLY, CATHERINE JAMES,
PEERLESS NETWORK, INC. and
RICHARD KNIGHT,

      Defendants.
_____/

## ORDER

THIS CAUSE is before the Court on Defendants Kelley Drye & Warren LLP, Henry Kelly, and Catherine James's (collectively, "**KDW Defendants**") Amended Motion to Dismiss Second Amended Complaint (Doc. 91), Defendants Peerless Network, Inc. and Richard Knight's (collectively, "**Peerless Defendants**") Amended Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 92), and Plaintiffs' Responses (Doc. Nos. 93, 94). For the reasons set forth herein, Defendants' Motions will be denied.

**I.     BACKGROUND**

Plaintiff Local Access, LLC ("**Local Access**") and Defendant Peerless Network, Inc. ("**Peerless**") are licensed and regulated as Competitive Local Exchange Carriers authorized to provide telecommunication services throughout the State of Florida. (Doc. 77, ¶¶ 1, 12). Plaintiff Blitz Telecom Consulting, LLC ("**Blitz**"), a communications services aggregator, is a customer of Local Access. (*Id.* ¶ 8). Defendant Richard Knight is a founder, shareholder, and executive vice president of sales and marketing of Peerless.

(*Id.* ¶ 13).  In 2012, Local Access and Peerless entered into a contract for Peerless to provide "Homing Tandem Service" for Local Access and its customers.  (*Id.* ¶ 28).  In 2017, Local Access filed suit against Peerless for breaches of that agreement ("**Case III**").[1]  (*Id.* ¶ 31).  Defendant Kelley Drye & Warren, LLP ("**KDW**"), a New York-based law firm, and two of its attorneys, Defendants Henry Kelly and Catherine James, represented Peerless in Case III.  (*Id.* ¶¶ 9–11, 32).

In the discovery phase of Case III, the Court entered a Protective Order Governing the Production of Discovery Material ("**Protective Order**") to protect certain information from disclosure and misuse.  (*Id.* ¶¶ 35–36; Doc. 77-1).  The KDW Defendants and Peerless violated the Court's Protective Order, and sanctions were issued.  (Doc. 77, ¶¶ 124–26, 155–56, 161–62).  However, during the sanctions proceedings, Local Access did not seek compensatory damages.  (*Id.* ¶ 141; *see also* Doc. 77-2).  Now, as a result of the discovery violations, Plaintiffs allege claims against Defendants for violations of the Defend Trade Secrets Act ("**DTSA**"), 18 U.S.C. § 1836 *et seq.*, the Florida Uniform Trade Secrets Act ("**FUTSA**"), Fla. Stat. § 688.001 *et seq.*, the Illinois Trade Secrets Act ("**ITSA**"), 765 Ill. Comp. Stat. 1065/1 *et seq.*, and the Telecommunications Act ("**TCA**"), 47 U.S.C. § 201, *et seq.*  (Doc. 77, ¶¶ 186–552).

**II.    LEGAL STANDARD**

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

---

[1] The parties have been involved in several disputes in the United States District Court for the Middle District of Florida, including *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, Case No. 6:14-cv-307-PGB-GJK ("**Case I**"); *Local Access, LLC v. Peerless Network, Inc.*, Case No. 6:14-cv-399-PGB-TBS ("**Case II**"); and *Local Access, LLC v. Peerless Network, Inc.*, Case No. 6:17-cv-236-WWB-EJK ("**Case III**").

8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III.   DISCUSSION

Defendants argue that the Second Amended Complaint (Doc. 77) should be dismissed pursuant to the rule against claim splitting and res judicata, the litigation privilege bars Plaintiffs' state law claims, and Plaintiffs fail to sufficiently allege trade secret misappropriation. The Peerless Defendants further argue that Plaintiffs fail to state claims under the TCA. Plaintiffs disagree.

### A.   Claim Splitting and Res Judicata

Defendants argue that the Second Amended Complaint should be dismissed in its entirety because this action constitutes impermissible claim splitting with the sanctions

3

proceedings in Case III and is otherwise barred by res judicata. "[T]he claim-splitting doctrine derives from the doctrine of res judicata." *Shannon v. Nat'l R.R. Passenger Corp.*, 780 F. App'x 777, 779 (11th Cir. 2019). "[A] district court may resolve the issue of res judicata [including claim-splitting] at the pleading stage where the defense appears on the face of the plaintiff's complaint and the court is in possession of any judicially noticeable facts it needs to reach a decision." *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 836 n.1 (11th Cir. 2017) (citing *Concordia v. Bendekovic*, 693 F.2d 1073, 1075–76 (11th Cir. 1982)). "At all times the burden is on the party asserting res judicata . . . to show that the later-filed suit is barred." *Kaiser Aerospace & Elecs. Corp. v. Teledyne Indus., Inc.* (*In re Piper Aircraft Corp.*), 244 F.3d 1289, 1296 (11th Cir. 2001).

"The claim-splitting doctrine: (1) 'requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit,' and (2) applies where a second suit has been filed before the first suit has reached a final judgment." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1236 (11th Cir. 2021) (quoting *Vanover*, 857 F.3d at 840 n.3, 841). To determine whether improper claim splitting has occurred, courts consider: "(1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions." *Id.* (quotation omitted). "Successive causes of action arise from the same transaction or series of transactions when the two actions are based on the same nucleus of operative facts." *Id.* (quotation omitted).

Plaintiffs argue that the rule against claim splitting is inapplicable because the sanctions proceedings in Case III was not a separate lawsuit and Case III and the instant action do not share a nucleus of operative facts. Case III was a breach of contract dispute

between Local Access and Peerless. *See* Case III, Docket 135, ¶¶ 36–116.[2] Therein, Local Access did not assert any claims for violations of the DTSA, FUTSA, ITSA, or TCA—the claims Plaintiffs assert in this case, and Plaintiffs do not assert a claim for breach of contract or related claims in this action, as in Case III. *Id.*; (*see also* Doc. 77, ¶¶ 186–528). While the discovery violations giving rise to Plaintiffs' claims in this case occurred during Case III and the Court addressed those violations through sanctions proceedings, the rule against claim splitting applies to lawsuits, and Defendants have not offered any authority for the proposition that the rule would extend to Local Access's motions for sanctions in Case III, rather than the underlying action. *See Vanover*, 857 F.3d at 841 (explaining that the test for claim splitting is "whether the first suit, assuming it were final, would preclude the second suit") (quotation omitted)). Thus, at this juncture, the Court rejects Defendants' claim-splitting argument.

Next, Defendants argue that the sanctions proceedings in Case III preclude this action under res judicata because it provided Plaintiffs the opportunity to litigate their claims. "[T]he doctrine of res judicata bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Maldonado v. U.S. Att'y Gen.*, 664 F.3d 1369, 1375 (11th Cir. 2011) (quotation omitted). "A claim is barred by res judicata, *i.e.*, claim preclusion, when '(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases.'"

---

[2] The Court takes judicial notice of the Second Amended Complaint in Case III. Fed. R. Evid. 201; *see also Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (holding that the district court properly took judicial notice of court filings in a previous case at the motion to dismiss stage).

5

*Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, 30 F.4th 1079, 1083 (11th Cir. 2022) (quoting *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999)).

At this stage of the proceedings, the Court is not convinced that res judicata bars Plaintiffs' claims. In their briefing, the parties extensively dispute whether Plaintiffs should and could have brought their claims under the DTSA, FUTSA, ITSA, and TCA in Case III's sanctions proceedings. The Eleventh Circuit has instructed that "for res judicata purposes, claims that could have been brought are claims *in existence at the time the original complaint is filed* or claims actually asserted . . . in the earlier action." *Maldonado.*, 664 F.3d at 1377 (quotation omitted); *see also Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992) ("[W]e do not believe that the res judicata preclusion of claims that 'could have been brought' in earlier litigation includes claims which arise after the original pleading is filed in the earlier litigation."). It is undisputed that the events giving rise to Plaintiffs' DTSA, FUTSA, ITSA, and TCA claims—Defendants' violations of the Protective Order—occurred well after the original complaint in Case III was filed. To the extend Defendants argue Plaintiffs could and should have pursued their claims in the sanctions proceedings in Case III, Defendants fail to offer any binding authority supporting the proposition that claims arising from discovery violations in an ongoing case must be fully litigated when seeking sanctions and cannot be addressed in subsequent litigation.[3]

---

[3] The cases Defendants cite are distinguishable. In *Porter v. Shah*, the court held that an employee's retaliation claims against his employer were barred by res judicata because the court had already addressed the merits of those claims in a post-judgment order. 606 F.3d 809, 813–14 (D.C. Cir. 2010). However, during the sanctions proceedings of Case III, Plaintiffs did not assert—and thus the court did not address—Plaintiffs' DTSA, FUTSA, ITSA, and TCA claims. Defendants also cite to *Best v. Ally Fin., Inc.* (*In re Best*), No. 18-58958, 2018 WL 6060316 (Bankr. N.D. Ga. Nov. 19, 2018), *In re Kikut*, No. 5:09-BK-71717, 2018 WL 2422418 (Bankr. W.D. Ark. Apr. 9, 2018), and

6

Based on the face of the pleading, it is unclear that res judicata applies to the sanctions proceedings in Case III, and the Court believes such arguments are better suited for summary judgment.

### B.  Litigation Privilege

Defendants further argue that the litigation privilege bars Plaintiffs' state law claims.[4]  "Florida's litigation privilege grants legal immunity for actions in judicial proceedings." *Madura v. Bank of Am., N.A.*, 767 F. App'x 868, 872 (11th Cir. 2019).  "The privilege confers '[a]bsolute immunity . . . to any act occurring during the course of a judicial proceeding so long as the act has some relation to the proceeding.'" *Id.* (quoting *Sun Life Assurance Co. of Can. v. Imperial Premium Fin., L.L.C.*, 904 F.3d 1197, 1218 (11th Cir. 2018)).  This immunity extends to parties and counsel.  *Id.*; *see also Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1275 (11th Cir. 2004).  The litigation privilege "may be considered in resolving a motion to dismiss when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Jackson*, 372 F.3d at 1277 (quotation omitted).

Defendants argue that Plaintiffs' FUTSA and ITSA claims all relate to Case III. Defendants point to Plaintiffs' allegations that the KDW Defendants violated the FUTSA and ITSA by providing discovery materials from Case III to the Peerless Defendants, their

---

*Williams v. Int'l Brotherhood of Elec. Workers* (*In re Williams*), 298 F.3d 458 (5th Cir. 2002), which are bankruptcy cases and are therefore governed by the bankruptcy code. Even so, all of these cases applied res judicata to claims actually decided in previous proceedings.

[4] Defendants assert that Florida's litigation privilege applies to "all of Plaintiffs' supplemental state-law claims, whether grounded in Florida or Illinois law," (Doc. 91 at 18; Doc. 92 at 18), and Plaintiffs do not dispute this assertion.  Thus, for the purposes of resolving the instant motions, the Court applies Florida's litigation privilege.

7

clients. Considering the facts as set forth in the Second Amended Complaint, even if the KDW Defendants' initial disclosure of discovery materials to the Peerless Defendants was related to Case III as Defendants argue—which the Court does not decide—, Defendants' alleged marketing efforts using the discovery materials were not.[5] (*See, e.g.*, Doc. 77, ¶¶ 182, 305–312, 382–393, 433–441, 456–469). Thus, at this stage of the proceedings, Defendants have failed to demonstrate clearly and affirmatively that the litigation privilege conclusively applies.

### C. Misappropriation of Trade Secrets

Next, Defendants argue that Plaintiffs fail to sufficiently allege their trade secret misappropriation claims in Counts I through XII. "A misappropriation claim requires a showing that (1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." *RxStrategies, Inc. v. CVS Pharmacy, Inc.*, 390 F. Supp. 3d 1341, 1351 (M.D. Fla. 2019) (quotation omitted) (discussing the elements of a misappropriation of trade secrets claim under the DTSA and FUTSA); *see also REXA, Inc. v. Chester*, 42 F.4th 652, 662 (7th Cir. 2022) (providing the following elements for a misappropriation of trade secrets claim under the ITSA: (1) "the information at issue was

---

[5] Defendants further argue that Plaintiffs' allegations of the KDW Defendants' involvement in the Peerless Defendants' improper marketing efforts, including references of their conspiracy to misappropriate Plaintiffs' trade secrets for commercial gain, are conclusory and lack sufficient factual support. Even if a conspiracy between Defendants is not properly alleged, Plaintiffs also allege the KDW Defendants provided marketing advice to Peerless when Peerless used the discovery materials to market to Plaintiffs' customers, (Doc. 77, ¶ 182), and Defendant has not sufficiently demonstrated, for the purpose of invoking the litigation privilege, that these alleged actions were related to a judicial proceeding.

8

a trade secret," (2) "it was misappropriated," and (3) "it was used in the defendant's business") (quotation omitted)).  The DTSA, FUTSA, and ITSA all define "misappropriation" in substantially the same manner as follows:

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who—
>
> (i) used improper means to acquire knowledge of the trade secret;
>
> (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
>
> (I) derived from or through a person who had used improper means to acquire the trade secret;
>
> (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>
> (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>
> (iii) before a material change of the position of the person, knew or had reason to know that—
>
> (I) the trade secret was a trade secret; and
>
> (II) knowledge of the trade secret had been acquired by accident or mistake[.]

18 U.S.C. § 1839(5); *see also* Fla. Stat. § 688.002(2); 765 Ill. Comp. Stat. 1065/2(b).  The DTSA defines "trade secret" as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—

>(A) the owner thereof has taken reasonable measures to keep such information secret; and
>
>(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3). The FUTSA and ITSA mirror portions of the DTSA's language and similarly define trade secret. *See* Fla. Stat. § 688.002(4); 765 Ill. Comp. Stat. 1065/2(d); *see also Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1311 n.13 (11th Cir. 2020) (describing the DTSA and FUTSA's definitions of "trade secret" as "substantially equivalent").

Defendants argue that Plaintiffs fail to sufficiently plead who either misappropriated a trade secret from the discovery materials or used a trade secret in their business. Defendants further argue that Plaintiffs improperly conflate four discovery productions and generally allege misappropriation of all those discovery materials without specifically identifying the trade secrets therein that were misappropriated. Plaintiffs counter that their allegations sufficiently describe the trade secrets at issue to put Defendants on notice of the nature of the trade secrets and that they sufficiently alleged how Defendants, through specifically named employees and attorneys, misappropriated Plaintiffs' trade secrets and derived certain benefits from doing so.

In the Second Amended Complaint, Plaintiffs allege that during discovery in Case III, it provided Defendants with Call Detail Records ("**CDRs**"), which contained Plaintiffs' customer names and other customer identifying information, traffic information, such as call routing information, minutes of use, and call volumes, technical data, including coding information, Machine Egress information, IP Address Out information, SIP Group IP

10

information, Confirmation Code Track ID information, and the specific terms of five customer contracts. (Doc. 77, ¶¶ 44–49, 51, 53, 59, 64). Plaintiffs detail the independent economic value of the information and allege that to maintain the secrecy of this information, it disclosed the data pursuant to the Protective Order and identified the information as "Confidential" and "Highly Confidential." (*Id.* ¶¶ 44–46, 49, 64–65). Plaintiffs allege that the KDW Defendants misappropriated that information by sharing it with the Peerless Defendants in violation of the Protective Order and that the Peerless Defendants, with the assistance and advice of the KDW Defendants, further misappropriated the information by using it to market Peerless's services to Plaintiffs' customers, also in violation of the Protective Order and even after Plaintiffs moved for sanctions in Case III. (*See generally id.*). Thus, accepting the factual allegations as true and construing them in a light most favorable to Plaintiffs, the Second Amended Complaint states claims against Defendants for misappropriation of trade secrets under the DTSA, FUTSA, and ITSA.[6] *See Gordon Food Serv., Inc. v. Price*, No. 6:20-cv-2273, 2021 WL 7448877, at *2 (M.D. Fla. Nov. 29, 2021); *Sentry Data Sys., Inc. v. CVS Health*, 361 F. Supp. 3d 1279, 1294 (S.D. Fla. 2018).

The KDW Defendants further argue that Plaintiffs' trade secret misappropriation claims fail based upon the Court's findings in Case III. Specifically, the KDW Defendants argue that Plaintiffs cannot establish they used certain discovery productions for an

---

[6] As to whether Plaintiffs alleged a misappropriated trade secret was used in the KDW Defendants' business, which is an enumerated element under the ITSA, Plaintiffs argue that, as alleged, the KDW Defendants shared Plaintiffs' trade secrets with the Peerless Defendants and worked together for related marketing while serving as hired legal counsel and thus were compensated for those services. (*See* Doc. 77, ¶¶ 206–07, 231, 314, 337, 419, 443).

improper purpose when the Court in Case III found no evidence supporting those arguments and that Plaintiffs cannot establish that their conduct was willful because the Court in Case III found that their violation of the Protective Order was negligent. Relatedly, the KDW Defendants contend that Plaintiffs' request for exemplary damages and attorneys' fees under their trade secrets claims must be dismissed because such an award is only available if the misappropriation was willful and malicious.

These arguments appear to be grounded in the doctrine of collateral estoppel, which "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *Kordash v. United States*, 51 F.4th 1289, 1294 (11th Cir. 2022) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). Courts apply collateral estoppel where: "(1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior suit; (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding." *Id.* (quoting *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1318 (11th Cir. 2012)). Like other preclusion doctrines, "[t]he party seeking to invoke collateral estoppel bears the burden of proving that the necessary elements have been satisfied." *Dixie Nat'l Life Ins. Co. v. McWhorter* (*In re McWhorter*), 887 F.2d 1564, 1566 (11th Cir. 1989). The KDW Defendants do not acknowledge these factors and instead generally argue that the Court in Case III already determined that certain discovery productions were not used for an improper purpose and that the KDW Defendants were negligent.

However, these assertions, without additional analysis, fall short of meeting Defendants' burden at this stage of the proceedings.

### D. Telecommunications Act

Finally, the Peerless Defendants argue that Plaintiffs' claims under the TCA, Counts XIII and XIV, should be dismissed because the Act is inapplicable and Plaintiffs' claims are time barred. At the outset, the Court notes that Local Access (Count XII) and Blitz (Count XIV) each appear to allege violations of both § 222(b) and § 222(c) against the Peerless Defendants in single counts. (See Doc. 77, ¶¶ 519, 542–44). However, this constitutes an impermissible shotgun pleading. "The failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'" *Beckwith v. BellSouth Telecomms. Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005) (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1029–30 (11th Cir. 2001)). "Shotgun pleadings wreak havoc on the judicial system" and "divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) (quotation omitted). As such, "[w]hen presented with a shotgun complaint, the district court should order repleading *sua sponte*." *Ferrell v. Durbin*, 311 F. App'x 253, 259 n.8 (11th Cir. 2009); *see also Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998) (noting that shotgun pleadings drain judicial resources, and the district should act *sua sponte* to define the issues at the earliest possible stage).

Counts XII and XIV each assert claims under two separate provisions of the TCA and thus "commit[] the sin of not separating into a different count each cause of action or claim for relief." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322–23

13

(11th Cir. 2015).  Therefore, the Second Amended Complaint must be dismissed as a shotgun pleading.  Plaintiffs will be granted leave to file an amended pleading for the sole purpose of correcting the shotgun deficiencies as to Counts XII and XIV.  Plaintiffs may not alter or amend their pleading in any other respects.  If Plaintiffs elect to amend, Defendants may renew their arguments as to the TCA in response the amended pleading.

IV. **CONCLUSION**

For the reasons set for herein, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendants Kelley Drye & Warren LLP, Henry Kelly, and Catherine James's Amended Motion to Dismiss Second Amended Complaint (Doc. 91) is **DENIED**.

2. Defendants Peerless Network, Inc. and Richard Knight's Amended Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 92) is **DENIED**.

3. The Second Amended Complaint (Doc. 77) is **DISMISSED without prejudice**.

4. On or before **September 22, 2023**, Plaintiffs may file an amended pleading solely to correct the shotgun deficiencies in Counts XII and XIV.  Failure to timely do so may result in the dismissal of those counts without further notice.

**DONE AND ORDERED** in Orlando, Florida on September 8, 2023.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record